UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ROSARIO RAMOS OCHOA,

      Petitioner,

v.

ANTONIO VIEYRA SUAREZ,

      Respondent.

_____/

Hon. Gordon J. Quist

Case No. 1:15-cv-01104

## <u>PARTIAL REPORT AND RECOMMENDATION</u>

This matter is before the Court on the Petition for Return of Children Pursuant to the Hague Convention filed by Petitioner Rosario Ramos Ochoa (Dkt. 1), which was referred to the undersigned by the Honorable Gordon J. Quist for report and recommendation under 28 U.S.C. §636(b)(1)(B) (Dkt. 17). The petition is filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49, 1983 WL 206353 (TIA) (the "Convention" or "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 - 9010.[1]

Robert A. Alvarez was appointed by Judge Quist as guardian ad litem in this matter by order dated December 9, 2015 (Dkt. 24).[2] The purpose of this report and

---

[1] The relevant Act, ICARA, has been transferred from 42 U.S.C. §§ 11601 – 11610 to 22 U.S.C. §§ 9001 – 9010.

[2] There is precedent for such appointment in Hague Convention cases. *See, e.g., Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109, 1114-15 (D. Colo. 2008); *Garcia v. Pinelo*, 2015 WL 4910654, at *2-3 (N.D. Ill. Aug 16, 2015); *Yaman v. Yaman*, 730 F.3d 1, 6 (1st Cir. 2013) (noting that the district court appointed a guardian ad litem to issue a report on the children's behalf); *Bowen v. Bowen*, 2014 WL 2154905, at *3 (W.D. Pa. May 22, 2014).

recommendation is to outline those issues not in dispute in the opinion of the undersigned, those issues which are in dispute, and to give Mr. Alvarez some guidance regarding the contours of his task.

This case presents a petition under the Hague Convention for a court order that Respondent return the minor children to Mexico. Both the United States and Mexico are signatory parties to the Hague Convention. "The United States is a contracting party to the Convention; and Congress has implemented its provisions through the" ICARA, 22 U.S.C. § 9001, *et seq.*; *Abbott v. Abbott*, 560 U.S. 1, 5 (2010).

The following facts are not in dispute.

1.      Ochoa and Suarez were married on April 10, 1993. They are still married but have been separated since 2006.

2.      At least two children were born to the marriage, including the two children in question, 10-year-old GV, DOB January 4, 2005, and 13-year-old MV, DOB August 21, 2002.

3.      Both children appear to have dual citizenship in the United States and in Mexico, having been born in the United States to parents of Mexican citizenship.

4.      The petition was filed within one year of the alleged wrongful retention or removal.

5.      Mexico was the children's habitual residence prior to the alleged wrongful retention in the United States, as they resided there continuously since 2005 with the exception of two prior vacations with their father (Respondent) in the United States.

6.     Petitioner Ochoa had rights of custody in Mexico and was actually exercising those rights at the time of the alleged wrongful retention.[3] However, to the undersigned's knowledge there was neither formal award of custody by any Mexican court nor any formal separation agreement between Petitioner and Respondent.

7.     In 2006, Respondent returned to the United States, leaving Petitioner in sole custody of the two minor children except for short vacations.

8.     Petitioner alleges under oath, and Respondent has not contradicted this, that the children were sent from Mexico by airplane on March 27, 2015 to visit with their father in the United States with a return flight to Mexico scheduled for April 26, 2015.

9.     Petitioner maintains, and Respondent does not dispute, that at no time did Petitioner relinquish her custody rights or consent to a change in the children's residence. It also appears that Petitioner made prompt efforts to obtain the return of her children (Dkt. 4, PageID.48).

10.     Respondent's retention of the children in the United States is thus "wrongful" within the meaning of the Hague Convention.

"The [Hague] Convention provides that a child abducted in violation of 'rights of custody' must be returned to the child's country of habitual residence, unless certain exceptions apply...." *Abbott v. Abbot*, 560 U.S. at 5. The Supreme Court summarized the structure of a Hague proceeding:

> The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must "order the return of the child forthwith," unless certain exceptions apply. See, *e.g.*, Arts. 4, 12. A removal is "wrongful" where the child was removed in violation of "rights of

---

[3] The court is mindful that it does not have authority under the Hague Convention to undertake a "best interest of the children" type of custody evaluation. Such evaluation should be undertaken in the country of the children's habitual residence.

custody." The Convention defines "rights of custody" to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Art. 5(a). A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence. Art. 19.

United States has implemented the Convention through the ICARA. The statute authorizes a person who seeks a child's return to file a petition in state or federal court and instructs that the court "shall decide the case in accordance with the Convention." 42 U.S.C. §§ 11603(a), (b), (d). If the child in question has been "wrongfully removed or retained within the meaning of the Convention," the child shall be "promptly returned," unless an exception is applicable. § 11601(a)(4).

*Abbott*, 560 U.S. at 9, (internal citations omitted).

The goal of signatory countries to the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Abbott*, 560 U.S. at 8. The Convention addresses the situation where one parent wrongfully removes or retains minor children from their habitual residences and keeps them in another country. *Friedrich v. Friedrich (Friedrich II)*, 78 F.3d 1060, 1063-64 (6th Cir. 1996). The Convention's remedy is "designed to restore the 'factual' status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent." *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3rd Cir. 1995).

The Hague Convention preserves, protects, and defers to the custody rights established by the laws of the Contracting States, by not having courts determine issues such as custody or support, but only and giving "jurisdiction to decide the merits of [the] abduction claim....." *Friedrich II*, 78 F.3d at 1063. (citing Hague Convention, art. 19; 22 U.S.C. § 9001(b)(4)). The Hague remedy leaves any disputes about custody for determination in the child's country of habitual residence, rather than the country to which

the child is abducted. *Abbott*, 560 U.S. at 20 ("The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence.").

Article One of the Convention describes its two narrowly-focused goals:

> (a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
>
> (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Hague Convention, art. 1. Here, the Hague Convention, unless a defense applies, requires return of the minor children to their habitual residence with their Petitioner mother in Mexico, leaving the Respondent free to seek custody of the minor children in an Mexican court, if he wishes, once the children have returned to Mexico.

ICARA facilitates expedited achievement of these focused goals by not requiring formalistic procedural hurdles such as authentication of documents and information in support of a petition, instead providing as follows:

> With respect to ... any petition to a court under section 11603 of this title, which seeks relief under the [Hague] Convention, or any other documents or information included with such ... petition or provided after such submission which relates to the ... petition, ... no authentication of such ... petition, document, or information shall be required in order for the ... petition, document, or information to be admissible in court.

22 U.S.C. § 9005.

Petitioner has met her burden of proving wrongful retention. "[A] petitioner seeking return of a child under the Hague Convention 'shall establish by a preponderance of this evidence . . . that the child has been wrongfully removed or retained . . . .'" *Robert v. Tesson*, 507 F.3d 981, 993-94 (6th Cir. 2007) (quoting 22 U.S.C. § 9003(e)(1), then 42 U.S.C. § 11603(e)(1)).

In order to prove that the retention of the minor children was wrongful, the Petitioner must establish the following elements:

> (a)      that retention is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b)      at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Robert v. Tesson,* 507 F.3d at 988 (citing Hague Convention, art. 3). Here, Petitioner has proven the elements of wrongful retention of the minor children.

Until their vacation in the United States in the Spring of 2015, the children were habitual residents of Mexico. The Sixth Circuit held that "a child's habitual residence is the nation where, at the time of their removal, the child has been present long enough to allow acclimatization, and where this presence has a 'degree of settled purpose from the child's perspective.'" *Robert*, 507 F.3d at 993 (quoting *Feder*, 63 F.3d at 224). The Sixth Circuit has instructed this Court to look "back in time, not forward" "and examine past experience" to determine the child's "customary residence prior to" the wrongful removal or retention. *Friedrich v. Friedrich (Friedrich I)*, 983 F.2d 1396, 1401 (6th Cir. 1993).

According to the Supreme Court, "The Convention defines 'rights of custody' to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.' Art. 5(a)." *Abbott*, 560 U.S. at 9. Here, from 2005 to 2015, Petitioner had exclusive custody of both children, provided their care, and determined where in Mexico they resided.

Article 3 of the Hague Convention provides that removal or retention of a child is wrongful when it breaches custody rights under the law of the country in which the child

was habitually resident immediately before the removal or retention. Hague Convention, art. 3. Thus, the laws of Mexico determine if Petitioner had custody rights at the time of removal. Custody rights may arise (1) by operation of law, or (2) by reason of an agreement having legal effect under the law of the country of habitual residence. Hague Convention, art. 3.

Here, Petitioner has custody rights of the minor children. Petitioner is their natural mother. The parties remain married. The Respondent father left the minor children in the custody of the Petitioner mother when he moved in 2006 to the United States, and Petitioner has continually provided their care, determined their residence, and exercised her custody rights before and since 2006. The parties agreed to a short vacation with the father to end with the children's return to their mother April 26, 2015, to continue residing in her custody.

The United States Supreme Court held in *Abbott*, 560 U.S. 1, that rights of custody for purposes of the Hague Convention are adequately established if the Petitioner is a natural parent who has visitation rights and a right that the other parent will not remove the children from the country without the other parent's consent, i.e., rights that Petitioner has here.

Under Mexican law, [4] a natural mother has "*patria potestas*" rights, which include custody and responsibility for minor children, exclusively when the father relinquishes

---

[4] This Court may take judicial notice of the law of Mexico and of the Mexican State of Michoacán, the state of the children's habitual residence. *See* Hague Convention art. 14 ("In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.")

custody, and the children cannot by law change residence without her consent. The minor children's habitual residence is in the Mexican state of Michoacán. As articulated in the case of *Avendano v. Smith*:

> Parental authority/responsibility (*patria potestas*) over the children will be exerted: I. By the father and mother. II. By the paternal grandfather and grandmother or by the maternal grandfather and grandmother, indistinctly, considering those with whom the children will have a better moral, educational, social, economical and family development.
>
> ....
>
> As long as the child is under parental authority/responsibility (*patria potestas* ), he or she shall not leave the residence of those who exert it without their permission or by order emitted by an authority legally qualified to do so.

Michoacan Civil Code §§ 367, 373.

The [Mexican] Federal Civil Code[5] states:

> Paternal authority/responsibility (*patria potestas* ) is to be exerted over the children themselves as well as over their assets. Regarding the care and education of the minors, parental authority/responsibility (*patria potestas)* is to be exerted in the manner prescribed by the order pronounced by the judge and in accordance with the Law of Social Prevision of Juvenile Delinquency of the Federal District (*Distrito Federal* ).
>
> ....
>
> Parental authority/responsibility (*patria potestas* ) is exerted by both parents. When due to any circumstance one of them ceases to exert it, it shall be exerted by the other one.
>
> ....

---

[5] The Federal Civil Code serves as the national statutory code that governs throughout Mexico in federal civil matters. *See* Jorge A. Vargas, *Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges,* 8 San Diego Int'l L.J. 475, 486 (2007). In addition, Mexico has various state codes for the different states within the country. *See* Vargas, *supra,* at 485.

> As long as the child is under parental authority/responsibility
> (*patria potestas* ), he or she shall not leave the house of those
> who exert it without their permission or by means of an order
> emitted by an authority legally qualified to do so.

Federal Civil Code art. 413, 414, 421.

*Avendano v. Smith*, 2011 WL 5223041, D. N.M. 2011.

Here, Petitioner is the mother of the children with *patria potestas* rights, and thus custody rights of the minor children under Mexican law. Petitioner had custodial rights at the time of the wrongful retention for purposes of the Hague Convention. Even if both parents had joint custody rights, the petitioning parent still has custody rights for purposes of the Hague Convention. *Abbott*, 560 U.S. at 9. See also *Robert v. Tesson*, 507 F.3d at 988 (sufficient if "retention is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention", citing Hague Convention, art. 3).

Petitioner was responsible for ensuring that the children were fed, clothed, housed, received appropriate health care, and were educated. Unquestionably, Petitioner was exercising her custody rights when she agreed her children could vacation with their father with an agreed return date of April 26, 2015.

Pursuant to the order of reference mentioned above (Dkt. 17) and a subsequent order entered November 17, 2015 (Dkt. 20), the court conducted in camera interviews of the two minor children on December 3, 2015. Although Respondent and his girlfriend

brought the children to my chambers, the children were interviewed individually by me with no other adult present except the Spanish/English interpreter.[6]

The court understood its task to be narrow, i.e., to determine whether two Article 13 defenses were available regarding what otherwise would be the apparent clear answer that the return of the children to Mexico is appropriate. The first defense would be whether the children were at a grave risk of physical and/or psychological harm if returned. This must be proved by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A). The second defense would be whether the children objected to return and were of an appropriate age and maturity that their wishes should be considered. This may be proved by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B). A subset of the second item is whether the child's wishes have been subject to undue influence by the Respondent, the present custodian.

The defense of "grave risk that the return of the child would expose him or her to physical or psychological harm" requires Respondent to prove, by clear and convincing evidence, one of two situations:

> First, there is the grave risk of harm when the return of the child puts the child in imminent danger [before] the resolution of the custody dispute – e.g., returning the child to a zone of war, famine, or disease. Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.

---

[6] It should also be noted that Respondent attempted to have the undersigned consider documentary evidence either in the form of an affidavit and/or a letter. The undersigned did not read or even look over the document(s) but instead told Respondent that if he wished to have such considered he should have the document(s) translated into English and filed with an appropriate case caption. Thus, the undersigned has no idea of the content of the document(s), as, to date, the proposed evidence has not been filed in the case by Respondent.

*Friedrich II*, 78 F.3d at 1069 (emphasis added). The "grave risk" defense is restricted to cases where "the risk to the child is grave, not merely serious." *Id.* at 1068-69 (citing Public Notice 957, 51 FR 10494, 10510 (March 26, 1986)).

"Grave risk" is not a license to assess the child's best interests, and "The exception for grave harm to the child is not license for a court in the abducted-to country to speculate on where the child would be happiest." *Id.* at 1068. "Adjustment problems that would attend the relocation of most children" do not establish a grave risk. *Id.* at 1067-68.

The Sixth Circuit has cautioned that courts need to trust that foreign courts have the ability to, and will, protect children by modifying custody if necessary. *Id.* at 1068 ("we acknowledge that courts in the abducted-from country are as ready and able as we are to protect children. If return to a country, or to the custody of a parent in that country, is dangerous, we can expect that country's courts to respond accordingly.") In addition, comparisons to opportunities in the United States are irrelevant, because the necessary "intolerable situation" does not "encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State." *Id.* At 1068-69.

The "age and degree of maturity" defense is limited to a mature child objecting to return, i.e., the child is of sufficient maturity that it is appropriate to take account of the child's views. Sufficient maturity is not defined by the Hague Convention and is a fact-intensive and idiosyncratic process. *De Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007); *see also, Dietz v. Dietz*, 349 Fed. App'x 930 (5th Cir. 2009).

As noted, both children were interviewed separately and both described rather serious abuse by their mother (Petitioner) and denied adamantly any abuse by their father

(Respondent). They both expressed a strong desire to remain in the United States with their father. They each, also independently, stated that they had been threatened by the Petitioner and that is why they had not reported the alleged abuse to any adult in Mexico. Candidly, because of the language barrier it was very difficult for me to assess the credibility of each child, both as to the allegations of abuse and whether or not they had been unduly influenced. It was also difficulty to assess their relative maturity. It is hoped that the guardian ad litem, who is bilingual, will be of assistance in this regard and will provide a report to the court on these narrow issues.

## CONCLUSION

For the reasons stated above, the undersigned recommends that the above facts and law be considered established and that the court order guardian ad litem Robert A. Alvarez to report on the issues discussed above, including allegations of grave risk, age and degree of maturity, credibility, and potential undue influence.


Date:  December 21, 2015                         /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                U.S. Magistrate Judge


OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).