UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ROSARIO RAMOS OCHOA,

      Petitioner,

                                            Hon. Gordon J. Quist

v.

                                            Case No. 1:15-cv-01104

ANTONIO VIEYRA SUAREZ,

      Respondent.

_____/

REPORT AND RECOMMENDATION

PROCEDURAL HISTORY

This matter was referred to the undersigned by the Honorable Gordon J. Quist under 28 U.S.C. §636(b)(1)(B), (ECF No. 17), for report and recommendation regarding whether the two minor children involved, MV and GV, should be returned to the custody of Petitioner, their mother, in Mexico or whether they should be permitted to remain here with Respondent, their father, in the United States. The Court issued a partial report and recommendation, (ECF No. 29), on December 21, 2015. The partial report and recommendation sets out the factual and legal background of the case and those facts are incorporated by reference. Petitioner filed objections to the partial report and recommendation (ECF No. 30) but the Court adopted it (ECF No. 35).

The order adopting the report and recommendation finds in favor of Petitioner on all issues except whether two exceptions apply. (ECF No. 35). The first exception is whether the children are at a grave risk of physical and/or psychological harm if returned. This must be proved by clear and convincing evidence. 22 U.S.C. §9003(e)(ii)(A). The

second exception is whether the children objected to their return and were of an appropriate age and maturity that their wishes should be considered. This must be proved by a preponderance of the evidence. 22 U.S.C. §9003(e)(ii)(B). A sub-issue is whether the child's wishes are the subject of undue influence.

Following in camera interviews of each child by the court, conducted with the assistance of interpreter Tamara Brubaker on December 3, 2015, a guardian ad litem was appointed on December 9, 2015 (ECF No. 24). The appointed guardian ad litem, Robert Anthony Alvarez, is fluent in the Spanish language. On February 4, 2016, the guardian ad litem requested that the children be evaluated by a bilingual mental health professional (ECF No. 37), which request was granted. The guardian ad litem made his report and recommendation on April 27, 2016, attaching the mental health evaluation conducted by Lupita A. Reyes, LMSW. (ECF No. 49). Pursuant to the Court's order of March 30, 2016, (ECF No. 43) the guardian ad litem's recommendation and attached mental health evaluation were filed with access restricted to the Court and the parties. They are incorporated by reference. Both the guardian ad litem and Ms. Reyes opined that both exceptions had been met and that the children had not been subject to undue influence. (*See,* ECF No. 49).

Petitioner was permitted to file supplemental information by April 15, 2016, (ECF No. 43), which she did (ECF Nos. 44-48). These are affidavits by Rosario Ramos Ochoa, Petitioner[1]; Juan Carlos, Petitioner's partner; Sandra Medina Ariaga, Petitioner's close friend; and Maria Elena, a teacher who knows the children. The Court granted Petitioner's

---

[1] Ms. Ramos Ochoa attached to her affidavit a doctor's statement of Dr. Maria Eugenia Salas Cordero, attesting to minor GV's general state of health and stating that the doctor never observed any signs of physical abuse during her routine medical care of GV.

request, (ECF No. 51), to adjourn the hearing to give Petitioner the opportunity to attend in person and/or produce other factual information.

A hearing was held on July 12, 2016, with Tamara Brubaker serving as interpreter. Present at the hearing were Respondent (the children's father); the guardian ad litem; the two children; and both counsel for Petitioner. The Court was advised that Petitioner, Ramos Ochoa, was not able to obtain a visa to attend the hearing and, given the strong negative evaluations of her parenting by her children, guardian ad litem Alvarez, and social worker Reyes, chose not to participate by telephone because she felt too vulnerable.

<u>ANALYSIS</u>

Grave Risk

As mentioned above the first exception is whether the children are at a grave risk of physical and/or psychological harm if returned. This must be proved by clear and convincing evidence. 22 U.S.C. §9003(e)(ii)(A).

During the pendency of this matter, both children have reported very serious abuse and neglect by their mother. Their statements have been consistent overall throughout: 1) the interview the Court conducted on December 3, 2015, with each of them separately; 2) their interviews with the guardian ad litem, Mr. Alvarez, also conducted separately; 3) the response to the petition, (ECF No. 13 and ECF No. 59[2]); and 4) their separate interviews with the social worker, Ms. Reyes. The only exceptions were that GV disclosed the alleged sexual abuse by her mother's godson only to Ms. Reyes and that the alleged

---

[2] Attachments to Respondent's initial submission (ECF No. 13) were translated by interpreter Ellen Donohue from Spanish into English and filed (ECF No.59) with access restricted to the court and the parties to protect the minors' identities.

sexual abuse of GV was disclosed by her brother, MV, to Mr. Alvarez but not to the undersigned. The affidavits submitted by Petitioner are in stark contrast to the interviews with the children and their testimony. As noted, the standard to establish a grave risk of harm is that it must be proved by clear and convincing evidence. Given the great conflicts in the evidence, the undersigned suspects that the truth may lie somewhere in the middle and that Petitioner may be neither the "monster" described to Ms. Reyes nor the near-perfect parent described by herself and others on her behalf.

In this regard, perhaps most troubling is GV's report of sexual abuse at the hands of Petitioner's godson. Both Petitioner and GV agree that GV did report this to Petitioner. However, there their stories diverge. The child GV states that her mother did not believe her and GV reported that her mother did no follow up. On the other hand, Petitioner described taking GV to the doctor and the doctor finding no physical evidence that the event had occurred. She stated that she did not report the accusation because the authorities would not have done anything without physical corroborative evidence. Nevertheless, it is very troubling that the mother never reported the alleged incident to authorities. Also troubling is that Respondent, in a statement to the court made at the July 12, 2016, hearing, said that one of the individuals who submitted an affidavit on behalf of Petitioner, namely Sandra Medina Ariaga, is the mother of the alleged sexual abuser, which alleged abuser is also alleged to be Petitioner's godson. (ECF No. 60, Transcript of July 12, 2016, Hearing, PageID.506, Line 16 to Line 24).

However, the burden on the Respondent here is very high and the Court cannot conclude that the grave risk of harm has been proven by clear and convincing evidence, given the great divide between the report and recommendation of the guardian ad litem,

4

including the Reyes report, my interviews with the children, and the affidavits of Petitioner and others on her behalf. Nevertheless, the recommendation of the guardian ad litem and the consistency of the children's statements were considered in evaluating the particularized objections of the children to being returned to Mexico to Petitioner's care, as discussed below.

<u>Age and Maturity</u>

The second exception is whether the children objected to their return and were of an appropriate age and maturity that their wishes should be considered. This must be proved by a preponderance of the evidence, 22 U.S.C. §9003(e)(ii)(B), and the Court must also consider whether or not the children have been subject to undue influence by a parent or other person. The Court does find in this matter that the minor children are of a sufficient age and maturity that their wishes should be taken into account given their repeated and adamant statements that they wish to remain with their father in the United States, and the very specific reasons stated consistently and repeatedly by them. Within a month, on August 21, 2016, MV will be 14, and GV turned 11 on January 1, 2016. The children were questioned under oath at the July 12, 2016, hearing. They were both born in the United States and are United States citizens. The undersigned found no credible evidence that they were being pressured or influenced by their father or his partner, however much Petitioner insists that they are or must be. Respondent has consistently stated that MV has his own cell phone on which he may contact Petitioner at any time. The guardian ad litem, Mr. Alvarez, noted that he had given GV and MV the opportunity to call their mother from the safety of his office, which opportunity they both rejected. (ECF No. 60, Transcript of July 12, 2016, Hearing, PageID.501, Line 14 to PageID.502, Line

5

14). The children have consistently denied being pressured by their father or their father's partner. The Court has witnessed Respondent on three separate occasions and has found his statements that he is seeking only to protect his children sincere.

Respondent returned the children after visits on two other occasions without incident. He has consistently stated that he is simply acting according to the children's wishes. (*See*, ECF No. 22, PageID.328). He also has stated that it was only because the children disclosed abuse and neglect to him that he resisted their return on this occasion.

Both Ms. Reyes and the guardian ad litem, Mr. Alvarez, who are both fluent in Spanish, found the children credible and sufficiently mature that their wishes should be taken into account. The Court is also influenced by the fact that their objections to returning to their mother in Mexico are very specific, although not every alleged incident is as precise as might be wished. At least one court has found the specificity of the child's objections relevant to the age and maturity exception. "We bear in mind that a child's 'generalized desire' to remain in the United States is 'not necessarily sufficient to invoke the exception'; rather, the child must 'include particularized objections to returning to' the former country of residence." *Vasconcelos v. Batista*, 512 Fed.Appx. 403, 407 (5th Cir. 2013)(citation omitted).

The Court has reviewed the case law submitted by Petitioner in her supplemental brief (ECF No. 56, PageID.475-PageID.481), and finds them readily distinguishable from the facts of this case. In *Wasniewski v. Grzelak-Johannsen*, 2007 WL 2344760 (N.D. Ohio Aug. 15, 2007), the court found undue influence on the child, and the court in *Barrera Casimiro v. Pineda Chavez*, 2006 WL 2938713 (N.D. Ga. Oct. 13, 2006) found evidence of influence. *See also, Haimdas v. Haimdas*, 720 F.Supp.2d 183 (E.D.N.Y. 2010). *Hirst*

*v. Tiberghien*, 947 F.Supp.2d 578 (D.S.C. 2013), similarly found undue influence and noted an ongoing custody battle between two parents. As previously noted, Respondent is not engaged in a custody battle and previously returned the children twice without incident. In *Blanc v. Morgan*, 721 F.Supp.2d 749 (W.D. Tenn. 2010), the emphasis was not allowing the abductor to benefit from the wrongful conduct. Here, it is difficult to see how taking on a teenager and a preteen, given Respondent's limited income, can be seen as a "benefit." This is not a situation where the Court is weighing one culture's benefits against another, which would be impermissible. Respondent's stated income would hardly provide a luxurious lifestyle in the United States. Again, the undersigned found the father's statements that he is simply honoring his children's strong objections to returning to their mother, after learning of their allegations of abuse and neglect, credible and sincere. Both Ms. Reyes and Mr. Alvarez found the children's denial of undue influence credible, as did the court.

The Tenth Circuit has recognized that the inquiry under the mature child exception is fact intensive and idiosyncratic:

> Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate. *Compare Anderson v. Acree*, 250 F.Supp.2d 876, 883 (S.D.Ohio 2002) (considering views of an eight-year-old child who was composed, calmly and readily answered questions, pointed to New Zealand on a globe, and indicated her understanding of the difference between truth and falsehood and of her obligation to tell the truth) and *Raijmakers-Eghaghe*, 131 F.Supp.2d at 957-58 (ordering limited discovery including psychological reports and in camera interview to gather enough information to pursue issue of eight-year-old child's wishes) with *Tahan v. Duquette*, 259 N.J.Super. 328, 613 A.2d 486, 490 (1992) (holding, without discussion, that the maturity exception "simply does not apply to a nine-year-old child") and *England*, 234 F.3d at 272-73 (reversing district court that had taken a thirteen-year-old child's wishes into account where child had learning disabilities, had had four mothers in twelve years, had attention deficit disorder, took Ritalin, and was scared and confused).

7

*de Silva v. Pitts*, 481 F.3d 1279 (10th Cir. 2007). The Second Circuit has found that whether or not a child is old enough and mature enough for her views to be considered is a factual finding reviewable for clear error. *Blondin v. Dubois*, 238 F.3d 153 (2nd Cir. 2001).   *See also, Escobar v. Flores*, 183 Cal.App.4th 737 (April 7, 2010), where the California Court of Appeal, Third Circuit, found that an eight-year-old child had sufficient age and maturity for the trial court to take account of the child's views.

The children report doing well at school and although learning English has been more difficult for MV than for GV, MV is being tutored. The court agrees with Ms. Reyes' assessment that both are more mature than their chronological age. Their testimony at the July 12, 2016, hearing seemed entirely credible when they both denied that their father or his partner had sought to influence their opinion in any way. In fact, GV was asked whether it was her wish to remain with her father in the United States even though that might mean she would not be able to see her mother until she was an adult. She remained steadfast in her wish to remain. GV clearly understood the implications of her decision.

While the undersigned concludes that, given the great conflicts in testimony presented between the minor children and Petitioner, evidence presented of the grave harm exception to the Hague convention did not rise to the level of *clear and convincing evidence*, the undersigned reiterates that she found the minor children's testimony credible and consistent, and clearly considered it in determining that the mature child exception should be applied. Their objections were highly particularized and very understandable.

CONCLUSION

For the reasons discussed above, I recommend that the Petition for Return of Children Pursuant to the Hague Convention (ECF No. 1) be denied because the children are of sufficient age and maturity to qualify for the "age and maturity" exception to the standards set out in the Hague Convention and both GV and MV have clearly and unequivocally stated their desire not to be returned to Petitioner.

Date: August 2, 2016                                  /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      U.S. Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).