UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSARIO RAMOS OCHOA,

        Petitioner,

v.

                                  Case No.  1:15-CV-1104

ANTONIO VIEYRA SUAREZ,

                                  HON. GORDON J. QUIST

        Respondent.
_____/

## ORDER ADOPTING FINAL REPORT AND RECOMMENDATION

        Petitioner, Rosario Ramos Ochoa, a citizen of Mexico, filed a Petition pursuant to the Hague Convention on the Civil Aspect of International Child Abduction (Convention), October 25, 1980, T.I.A.S. No. 11, 670 1343 U.N.T.S. 97, reprinted in 51 Fed. Reg. 10,493 (Mar. 26, 1986), and the International Child Abduction Remedies Act (ICARA), 22 U.S.C. § 9001, *et seq.*, seeking return of her two minor children, MV and GV, to Mexico, their exclusive and habitual residence.  On November 16, 2015, this Court entered an order pursuant to 28 U.S.C. § 636(b)(1)(B) referring this matter to United States Magistrate Judge Ellen Carmody for a report and recommendation on the Petition.  (ECF No. 17.)  On January 6, 2016, the Court adopted Magistrate Judge Carmody's December 21, 2015 partial Report and Recommendation, which concluded that Petitioner met her burden of establishing a prima facie case for return of MV and GV under the Convention.  (ECF No. 35.)  The only issues remaining for decision were whether the grave risk and age and maturity exceptions or defenses under Article 13 of the Convention applied.

        On August 2, 2016, Magistrate Judge Carmody issued a Report and Recommendation (R & R) addressing the applicability of both exceptions.  Prior to issuing the R & R, Magistrate Judge Carmody:  1)  interviewed MV and GV *in camera*, 2) obtained a report and recommendation from

Robert Anthony Alvarez, the appointed guardian ad litem, 3) received a mental health evaluation of the minors by a clinical therapist (Ms. Reyes), 4) reviewed various affidavits submitted by Petitioner, and 5) held a hearing.  In her R & R, the magistrate judge concluded that Respondent failed to establish the grave risk exception by clear and convincing evidence.  (ECF No. 61 at PageID.524.)  However, the magistrate judge concluded that MV and GV are of sufficient age and maturity for their wishes to be taken into account.  (*Id.* at Page ID.528–29.)  The magistrate judge considered the following as supporting her conclusion:

- MV was 13 at the time of the R & R and would soon turn 14 and GV turned 11 on January 1, 2016.

- There was no credible evidence that Respondent or his partner was pressuring MV or GV regarding their wishes.

- Respondent's statements that he only intended to honor his children's objections to returning to their mother after learning of their allegations of abuse and neglect were credible and sincere.

- Respondent had returned the children to Petitioner without incident following two prior visits to the United States.

- The children gave specific and consistent reasons for wanting to remain with Respondent and were adamant in their wishes to remain in the United States with Respondent.

- The parties are not engaged in a custody battle and there is no indication that Respondent would benefit from the children remaining with Respondent.

- MV and GV are more mature than their chronological age.

(*Id.* at PageID.525–28.)

Petitioner has filed an Objection to the R & R, arguing that the Court should reject the magistrate judge's recommendation that the Court deny the Petition on the basis that the age and maturity exception applies.  Pursuant to 28 U.S.C. § 636(b), upon receiving an objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  After

conducting a de novo review of the R & R, Petitioner's Objection, and the pertinent portions of the record, the Court concludes that the R & R should be adopted.

Pursuant to Article 13 of the Convention, a court may refuse to order "the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." A respondent has the burden of establishing this exception by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B); *see also Simcox v. Simcox*, 511 F.3d 594, 604 (6th Cir. 2007). In addition, like all of the exceptions under the Convention, the age and maturity exception is narrow. 22 U.S.C. § 9001(a)(4); *see also England v. England*, 234 F.3d 268, 272 (5th Cir. 2000) ("Like the grave risk exception, the 'age and maturity' exception is to be applied narrowly."). The Convention does not establish a minimum age at which a child is considered sufficiently mature for its views to be considered, *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007), nor does it provide "objective criteria or tests for assessing 'maturity' in the context of the mature child exception." *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 205 (E.D.N.Y. 2010) (citing Anastacia M. Greene, *Seen and Not Heard? Children's Objections Under the Hague Convention on International Child Abduction*, 13 U. Miami Int'l & Comp. L. Rev. 105, 132 (2005)). Such "determination is to be made on a case-by-case basis." *Yang*, 499 F.3d at 279. A "child's wishes can be the sole reason that a court refuses to order the return of the child to his or her habitual residence." *Id.* at 278 (citing *Blondin v. Dubois*, 189 F.3d 240, 247 (2d Cir. 1999)). In such case, however, where other considerations—such as the grave risk of harm exception—do not apply, the court must apply a "'stricter standard.'" *Id.* at 278–79 (quoting *de Silva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007)).

### *Consideration of the Evidence*

Petitioner first argues that the magistrate judge erred by placing too much weight and emphasis on the statements and opinions of MV and GV without giving sufficient consideration to,

or crediting, the affidavits of Petitioner and other witnesses she offered to rebut MV's and GV's claims that Petitioner physically and verbally abused and neglected them. Petitioner also suggests that, although the magistrate judge surmised that the truth probably lies "somewhere in the middle" of what the children describe, on the one hand, and Petitioner and her witnesses describe on the other, the magistrate judge discounted Petitioner's evidence and accepted the children's opinions as fully credible. More specifically, Petitioner argues that MV's and GV's allegations, especially those concerning Petitioner's handling of the sexual abuse incident alleged by GV, improperly infected the magistrate judge's analysis of the age and maturity exception. (ECF No. 62 at PageID.534.)

Having read the entire record evidence, the Court rejects Petitioner's arguments. The Court concurs with the magistrate judge's assessment of MV's and GV's level of maturity. In considering this exception, "the Court is tasked with determining whether based largely on the children's reasons for objecting to their return they are equipped with a level of maturity to voice a meaningful objection to return." *Khalip v. Khalip*, No. 10-13518, 2011 WL 1882514, at *8 (E.D. Mich. May 17, 2011). Unlike the magistrate judge, the Court did not interview the minors *in camera*. Nonetheless, it has read the report of the guardian ad litem, including Ms. Reyes's report, as well as the transcript of the July 12, 2016 hearing at which MV and GV were questioned under oath, and finds an adequate basis to conclude that they are not only of sufficient age (13 and 11 at the time of the hearing), but also of sufficient maturity, that their wishes should be taken into account. The guardian ad litem and Ms. Reyes both found that MV and GV were mature beyond their years and that they both appeared to fully understand the consequences of their wishes to remain in the United States with Respondent. (ECF No. 49.) Both minors gave testimony that was consistent with these impressions at the July 12, 2016 hearing. (ECF No. 60 at PageID.513, 514–15.) Moreover, in finding that MV and GV gave consistent and highly particularized reasons for objecting to returning

to Mexico, the magistrate judge was not required to accord Petitioner's evidence any particular weight, so long as MV and GV articulated rational and considered reasons for their objections.

Petitioner further argues that the incidents MV and GV complained of are insufficient to terminate Petitioner's parental rights. As the magistrate judge noted, however, both children gave consistent and highly particularized reasons indicting that they feel safe and protected in their current environment. In addition, the Court notes that GV's reasons for objecting to returning to Mexico were not limited to remaining with her father, but were also based upon a comparison of the conditions she faced in both countries. In particular, GV stated that Petitioner's home in Mexico is near drug dealers, whom GV fears may kidnap GV and MV and make them deliver drugs. (ECF No. 49-2.)

### *Undue Influence*

Petitioner also takes issue with the magistrate judge's finding that the children's objections did not result from undue influence from Respondent. Petitioner argues that the magistrate judge failed to consider the influence—whether intended or not—that Respondent naturally had on the children during a lengthy period of wrongful retention resulting from these protracted proceedings. Indeed, courts have recognized that an abducting parent can influence a child's preferences "either by virtue of statements made to the child or by virtue of the lengthy wrongful retention." *Hirst v. Tiberghien*, 947 F. Supp. 2d 578, 598 (D.S.C. 2013). Moreover, the Court acknowledges that the instant proceeding was not as expeditious as the Convention envisions, in part, to allow the guardian ad litem to complete his work and obtain a psychological evaluation from Ms. Reyes and to allow Petitioner time to gather further evidence and make arrangements to attend the evidentiary hearing. Nonetheless, based on its reading of the record, the Court agrees with the magistrate judge that there is no specific evidence that Respondent or his girlfriend pressured or influenced MV or GV in any way.

### *Respondent's Illegal Alien Status*

Petitioner also points out that the magistrate judge failed to address the ramifications of Petitioner's status as an illegal alien. Petitioner's illegal status—which is undisputed—has been of concern to this Court from the outset. In fact, that Court envisaged it likely that Respondent would not show up with the children for the November 13, 2015 hearing. During the course of this proceeding, however, Respondent has proven the Court's concerns unfounded, as Respondent has attended all proceedings and produced the children for interviews and evaluations as required. As Petitioner correctly notes, however, Respondent is subject to deportation at any time.

Petitioner fails to cite any case law addressing how, if at all, a respondent's illegal status should factor into a decision on a petition under the Convention. In any event, in the context of the "settled" inquiry under Article 12 of the Convention, courts have concluded that the immigration status of the respondent and the child is but one of several factors to be considered. *See Hernandez v. Garcia Pena*, 820 F.3d 782, 787–88 (5th Cir. 2016). In *In re B. Del C.S.B.*, 559 F.3d 999 (9th Cir. 2009), the Ninth Circuit said that "only in a case in which there is an immediate, concrete threat of removal can immigration status constitute a significant factor with respect to the question whether a child is 'settled.'" *Id.* at 1010. The court found "nothing in the Convention itself, in our case law, or in the practical reality of living in this country without documented status, to persuade us that immigration status should ordinarily play a significant, let alone dispositive, role in the 'settled' inquiry." *Id.* Although the "settled" defense is not at issue here, there is no indication that Respondent is subject to "an immediate, concrete threat of removal," *id.*, nor is it clear to the Court that Respondent's immigration status should receive any particular consideration in deciding whether to order the return of the children, particularly in light of the fact that both of them have dual citizenship.

6

*Discretion*

Last, Petitioner argues that even if the Court concludes that Respondent has established the age and maturity defense, it should exercise its discretion to return MV and GV to Mexico. *See Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) ("[A] federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." (citing *Feder v. Evans-Feder*, 63 F.3d 217, 225 (3d Cir. 1996)). Petitioner urges many of the same arguments discussed above as reasons for the Court to exercise its discretion. Given the lack of evidence of undue influence by Respondent, the absence of any indication that Respondent withheld MV and GV in this country to obtain a more favorable jurisdiction to determine his custody claims, *see Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005), and MV's and GV's firm and understandable desires to remain in the United States, the Court concludes that the equities weigh in favor of allowing MV and GV to remain in the United States.

*Conclusion*

This Court does admit that these are not easy cases. But, for the reasons stated above,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation issued August 2, 2016 (ECF No. 61) is **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Petitioner's Objection (ECF No. 62) is **OVERRULED**.[1]

A separate order denying the petition will enter.


Dated: November 29, 2016                                      /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE

---

[1] The Court previously mailed a copy of an order to Respondent on two occasions and both times the mail was returned, the last time stating, "Returned to Sender/Not Deliverable as Addressed/Unable to Forward." (ECF Nos. 66, 67.) Respondent has now updated his current address with the Clerk.